The People, *ex rel.* Post, *vs.* Fleming, sheriff of Tioga.

Under the statute relating to the *redemption of lands*, a senior judgment creditor may acquire the interest of the purchaser on a sale upon a junior judgment.

And where there were *five* judgments which were successive liens against the same defendant, and his land was sold on executions on the *first*, *second* and *fourth*, for a sum sufficient to pay the first two and a part of the fourth judgment, and the respective creditors in the *third* and *fifth* judgments, in order to acquire the title of the purchaser, each delivered the proper papers and paid the amount with interest of his bid, but neither paid the other's judgment; *held* that the creditor in the *third* judgment was entitled to the conveyance.

A creditor having two judgments, which are successive liens, may cause a sale to be made on the junior one; and is then entitled to acquire the right of the purchaser by virtue of his other judgment, in preference to a creditor whose judgment is junior to both.

An assignment of a judgment by an administrator of the plaintiff is as effectual under the statute for the redemption of lands, as though executed by the plaintiff while living.

· The death of the intestate and the appointment of an administrator may be shown by an affidavit presented with the other papers, without producing the letters of administration.

Whether the actual existence of such facts would not render the proceeding regular without presenting any proof of them. *Quere. Per* Bronson, C. J.

An assignment of a judgment is sufficient, if it state correctly the title of the suit, though the time when and the court in which it was rendered be omitted.

Where there is no subscribing witness to the assignment of a judgment, on which

the right of a purchaser of land on execution is sought to be acquired, the affidavit of its execution may be made by any person who saw it executed and delivered. Such person is *a witness to the assignment* within the meaning of the statute.

And where there *is* a subscribing witness, the affidavit of one acting in the matter as agent of the creditor, swearing directly to such agency, and that he saw the instrument executed and delivered is sufficient—being equivalent to the affidavit of the creditor himself. *Semble. Per* BRONSON, C. J.

A *mandamus* to the sheriff to compel a conveyance to the party entitled thereto as a purchasing creditor will be awarded, though it appear that one has already been given to another creditor claiming in the same character, who has sold and conveyed the premises to a *bona fide* purchaser.

REDEMPTION of lands sold on execution. There were seven judgments against Daniel Hart and others, which were docketed in the following order : 1, in favor of Burnham ; 2, in favor of Dana ; 3, in favor of Biddle ; 4, in favor of the same ; 5, 6 and 7, in favor of the Bank of Ithaca. Executions were issued upon the judgments 1, 2 and 4, and the lands were sold by the sheriff on the 15th of January, 1842, to Isaac S. Kellum. From the proceeds of the sale the Burnham and Dana judgments (1, 2,) were satisfied : and the sum of $575 was applied on the Biddle judgment, (4 ;) leaving a balance of more than $3000 still due on that judgment.

On the 15th of April, 1843, the relator, by his agent, applied to the sheriff for the purpose of acquiring the title of the original purchaser. The agent presented to the sheriff copies of the dockets of the two Biddle judgments, (3, 4,) with an affidavit of the amount due on them respectively. The agent also made and presented to the sheriff an affidavit containing the copy of an assignment of each of the Biddle judgments to the relator, by " Henry Drinker, administrator of estate of James C. Biddle deceased ;" and by the affidavit the agent testified in relation to each of the assignments, " that the said Henry Drinker was, at the time of executing the said assignment, and now is, sole administrator of the said James C. Biddle, the plaintiff in the said judgment, who is deceased ; and that this deponent saw the said Henry Drinker execute and deliver the said assignment above copied, and was a witness thereto." There was no *subscribing* witness to either of the assignments. The

agent paid the proper sum to the sheriff for the purpose of acquiring the title of the original purchaser.

On the same day, the Bank of Ithaca presented the proper papers, and paid the necessary sum to the sheriff, for the purpose of acquiring the rights of the original purchaser. But the bank paid nothing by way of purchasing from the relator. On the 9th of June, 1843, the sheriff gave a deed to the bank; and between that time and the January following, when the mandamus issued, the bank sold the lands to *bona fide* purchasers. The mandamus requires the sheriff to execute a deed to the relator, or show cause, &c. The relator demurred to the return, and the defendant joined in demurrer.

*George Sidney Camp & M. T. Reynolds*, for the relator.

*B. D. Noxon*, for the sheriff.

*By the Court*, BRONSON, Ch. J.   As the lands were sold by the sheriff on an execution upon one of the Biddle judgments, as well as upon the Burnham and Dana judgments, the relator could not use that judgment, although a large balance remained due upon it, for the purpose of acquiring the title of the original, or any subsequent purchaser. (2 *R. S.* 373, § 58; *Ex parte Paddock*, 4 *Hill*, 544; *Ex parte Stevens*, 4 *Cowen*, 133.) But the relator also owned the other Biddle judgment, on which no execution had been issued; and the papers left with the sheriff were so prepared as to show the relator's rights under each, as well as both of the judgments.

The first Biddle judgment (number 3,) was senior to the second, (number 4,) on which the sale was made by the sheriff; and it is insisted, that a creditor having a lien which is senior to the one on which the sale was made, has no right to acquire the title of the original purchaser. But the language of the statute is broad enough to cover the case. The substance of the provision is, that *any creditor*, having a judgment rendered at *any time* before the expiration of fifteen months from the time of the sale, may acquire the rights of the original purchaser.

(§ 51.)   And the point was adjudged in *Ex parte Peru Iron Company*, (7 *Cowen*, 540,) that a senior judgment creditor may acquire the title of the original purchaser under a junior judgment.   We are asked to review that decision; and a case has been put by way of illustrating the injustice which may follow from that doctrine.   There are three judgments of $1000 each, and lands of the value of $2000 are sold on the youngest judgment, for $500; then the owner of the oldest judgment acquires the title of the purchaser at the sheriff's sale.   If the owner of the second, or middle judgment, purchases from the last purchaser, he must reimburse that purchaser the amount which he paid, and must also pay him the amount of his judgment. (§ 55.) And thus he is compelled to pay $1500 for the land, when the prior lien was only $1000; and the lands which he has obtained are worth only $500 beyond the amount of his payments; so that he has secured but one half of his debt, when if the several liens had been preserved in their proper order, he would have secured the whole.   But the answer to all this is, that the owner of the middle judgment may disregard all that has been done under the one which is junior, and sell on his own judgment.   That will defeat the prior sale, and drive the senior judgment creditor to the necessity of selling on his own judgment; and thus the several liens will be maintained in their proper order.   But as the owner of the senior judgment would in this way lose what he paid as a purchasing creditor, he would not be likely to exercise his privilege of purchasing under the junior judgment in the case which has been supposed.

The supposed case which I have been answering is not of much importance on the present occasion; for neither of the judgments of the bank of Ithaca comes between the judgment on which the sheriff sold, and the one under which the relator purchased.   The bank could exercise its right to purchase, without being obliged to pay any thing beyond the liens which were prior to its own judgments.   It is evident, therefore, that no injury can be done by allowing the relator to purchase under a judgment which is senior to the one on which the sheriff sold.

The question has thus far been considered as though the

The People *v.* Fleming.

sale by the sheriff had been on the Biddle judgment alone; but it was also made upon the Burnham and Dana judgments, which were senior to all the rest; and there can be no doubt but that the relator had the right to acquire the title of the original purchaser under those judgments.

It has been further urged against the relator, that after selling under his junior judgment, he could not assert the lien of the senior one. But under our system, lands are always sold subject to the prior liens; and it can make no difference in principle whether those liens are owned by the execution creditor, or by third persons. A creditor who has several judgments does no wrong to any one by selling under that which is junior to the rest. It is known to the bidders, and to all others, that the land will remain subject to all prior liens.

The next objection is, that the relator did not present to the sheriff an assignment of the judgments from Biddle, who recovered them, to Drinker, who assigned to the relator. The answer is, that Drinker was not the assignee, but the representative of Biddle. He assigned as administrator; and the facts that he was administrator, and that *Biddle was dead*, were proved by the affidavit which was presented to the sheriff. Although the statute does not, in terms, provide that such facts may be proved by affidavit, I think that kind of proof was sufficient for the occasion. Perhaps it was enough that Biddle was in fact dead, and that Drinker was administrator, without producing any proof of those facts. The statute does not require it. But the relator took the prudent course of furnishing *prima facie* evidence of those facts, and that was sufficient. It is true that the letters of administration might have been produced; but the statute has not required that it should be done; and if the letters had been produced, they would not have proved the death of Biddle; nor could they have been properly left with the sheriff, as was the affidavit, for the information of other creditors who might come to purchase.

Each of the assignments from the administrator to the relator commences with the title of the suit, one against four, and the other against three defendants, and then transfers the

judgment to the relator; but without giving any particular description of the judgment as to amount, or the time when, or the court in which it was recovered. And it is said, that this does not sufficiently identify the assigned judgments as the ones under which the relator applied to purchase. But there is nothing in the objection. The suits mentioned in the assignment, and those mentioned in the copy dockets lêft with the sheriff are between the same parties; and there is no proof nor pretence that Biddle ever had any other than these two judgments against the same defendants. In the absence of such proof the presumption is, that the judgments assigned are identical with those used before the sheriff.

A creditor who desires to acquire the title of the original purchaser must present a true copy of all the assignments of the judgment under which he claims, "verified by *his* affidavit or by the affidavit of some witness to such assignments." (§ 60.) In this case the affidavit was made by Kellum, who swore that he was the agent of the relator; and he transacted the business as such agent. He swore that he saw Drinker execute and deliver each of the assignments, and was a witness thereto. I am strongly inclined to the opinion that this would have been sufficient, even though there had been subscribing witnesses to the assignments—that the affidavit of the creditor's agent, when he has equal means of knowledge, is the affidavit of the creditor within the meaning of the statute. The reasoning which would deny this must go far to show that the creditor cannot act by an agent or attorney in any part of the business, but must act in person; for the same section says, "*he* shall present" all the necessary papers. The statute does not require the best evidence; for the interested creditor may swear himself, instead of producing the subscribing witness. There is nothing therefore in the nature of the case which should exclude the agent, where he is able to speak positively to the execution of the assignment.

But however this may be as a general rule, here there was no subscribing witness to either of the assignments; and the affidavit might be made by any person who could swear, as

Kellum did, that he saw the instrument executed and delivered; he was a witness to the assignment within the meaning of the statute. The statute does not say, a *subscribing* witness; but "*some* witness." And when there is no subscribing witness, any person who actually saw the instrument executed, is a witness to it, within the meaning of the statute. In *Ex parte Aldrich*, (1 *Denio*, 662,) there were two subscribing witnesses to the assignment; and the instrument was neither proved by them, nor by the creditor. And Coman, who described himself as agent, did not swear that he was the agent of the creditor; (*see Ex parte Bank of Monroe,* 7 *Hill,* 177 ;) nor did he swear that he saw the instrument executed.

I have assumed that the bank was regular in all that it did for the purpose of acquiring the title of the original purchaser. But as the relator was also regular in his proceedings, and had the senior judgment; and as the bank did not pay that judgment, he, and not the bank, was entitled to the deed.

The only remaining argument which has been used against the relator is, that the bank obtained a deed from the sheriff; and has since sold the land to *bona fide* purchasers. That is a matter with which the sheriff has nothing to do. He must do his own duty, and leave the purchasers from the bank to take care of themselves as well as they can. The relator must have a deed from the sheriff, because he is entitled to it; and because that is the only way in which he can be put in a condition to try titles with the bank, or with any one else who may be in possession of the land. But it must not be inferred from this mode of disposing of the argument, that I entertain the opinion that a *bona fide* purchaser from the bank will be able to defend himself against the relator's title. He will undoubtedly find it necessary to resort to the covenants in his deed.

A good deal was said on the argument of this case, and that of *The People* v. *Ransom,* decided at this term, upon the abstract question whether the statute of redemptions ought to receive a strict or liberal construction. Cases may be found in the books where different judges have taken different sides of that question; and some of the adjudications have gone far enough in

The People *v.* Fleming.

both directions. But I am not aware that any case has gone so far in the point directly and necessarily adjudged, that it ought not to be followed when the same point may be again presented. Judicial decisions touching rights to property ought not to be lightly overturned. In relation to the new points which may arise—and there is never likely to be an end of them under this very imperfect law—it cannot be very profitable to discuss the abstract question whether the statute should receive a strict or a liberal construction. I think it should receive such a reasonable construction as is best calculated to carry into effect the end which the legislature had in view. That end was, to make the land bring its utmost value, by means of an auction among the creditors, preserving to each one his right according to the seniority of his lien. The mode of conducting the auction, so far as it has been plainly prescribed, must be followed, whether it be reasonable or unreasonable; unless the party who has the right to insist upon performance, chooses to dispense with it. When the meaning of the statute is doubtful, that construction should be adopted which will secure the rights of all the creditors according to the seniority of their respective liens, and keep up the auction until the best price has been obtained. And the same great end should be steadily kept in view, in disposing of all questions upon which the statute is silent. Following these rules, we think it clear that the relator is entitled to a deed.

BEARDSLEY, J. being interested, gave no opinion.

Judgment for the relator.(*a*)

(*a*) See *The People* v. *Ransom*, (*post, p.* 145.)