OTSEGO SPECIAL TERM, November, 1850.   *Monson,* Justice.

## AYLESWORTH *vs.* BROWN, late sheriff, &c.

Under the section of the revised statutes, providing that to entitle a junior judgment creditor to redeem from the purchaser of premises, sold upon a prior execution, he shall leave with the sheriff a true copy of all the assignments of the junior judgment which are necessary to establish his claim, verified by his affidavit, &c.; an affidavit, by a redeeming creditor, setting forth the assignments at length, and alledging that "the foregoing assignments are true and correct copies of the original assignments of N. R. and P. G.," is sufficient.

So, in respect to an affidavit, stating that "the following is a true and correct copy of the original assignment of N. R. to P. G.;" and which then, after giving a literal copy, proceeds further to state, "that said P. G. sold and assigned said judgment to this deponent, and that the following is a true and correct copy of the said original assignment;" also giving a literal copy thereof.

An assignment of a judgment is not rendered invalid by the omission of the middle letter of the assignor's name, in the title of the suit and in the signature; nor by the omission of the name of one of the attorneys for the plaintiff in the judgment; nor by the stating the amount of the judgment to be "$75 besides costs," while the amount mentioned in the docket, is "$120 damages and costs;" nor because the assignment states that the judgment was rendered in 1844, whereas it was docketed on the 13th of January, 1845; especially in the absence of any pretense that there was more than one judgment between the parties.

The omission of the middle letter of the plaintiff's name, in an assignment of a judgment, is an immaterial variance; the law recognizing but one christian name.

AN order had been previously obtained against the defendant, late sheriff of Otsego county, to show cause at this term, why he should not execute a deed to the relator, of certain premises sold by him on the 15th February, 1849, upon an execution against William Aylesworth, and in favor of I. J. Aylesworth. Elijah Brown bid off the premises, at $200, and obtained the sheriff's certificate. The twelve months elapsed without any redemption on the part of the judgment debtor. At three minutes before 12 o'clock P. M., on 15th May, 1850, the relator, by his attorney, L. J. Burditt, redeemed, on a judgment in favor of

Aylesworth v. Brown.

Lodowick Austin, by paying $218, leaving with the sheriff a copy of the docket of judgment, by which it appeared that the same was docketed on the 15th of May, 1850, for $539,37 damages and costs, and also leaving a copy of an assignment of said judgment, duly verified by the affidavit of said relator, who also made affidavit of the amount due thereon. George W. Chase then redeemed upon a judgment in favor of Anthony Snyder, and the relator again redeemed upon a judgment in favor of John L. Thompson. It is unnecessary to state these facts particularly, as no questions arise out of them. On the 17th of May, between eight and nine o'clock, A. M. George W. Chase undertook to redeem again, upon a judgment in favor of Norman Rowley, or Norman C. Rowley, and presented certain papers to the sheriff, viz.: a copy of the docket of judgment, a copy of the assignment to Peter Grossfield, and an assignment from him to said Chase, with affidavits verifying the same, and showing the amount due, and made the necessary payment. At about half past seven o'clock, P. M. of the same day, E. Brown, as attorney and agent of Chase, served additional papers for the purpose of redeeming, by virtue of the Rowley judgment, and on the 18th of May, at half past eight, P. M. Brown, as attorney for Chase, again presented papers to further perfect the redemption on the Rowley judgment. And whether these papers, any or all of them, were sufficient to entitle Chase to a deed, was the question for consideration.

*L. J. Burditt*, for the relator.

*E. Brown*, for the defendant.

MONSON, J. By the revised statutes, (2 *Rev. Stat.* 373, § 60,) it is provided that, to entitle any creditor to acquire the title of the original purchaser, he shall present to, and leave with, the officer who made the sale, first, a copy of the docket of the judgment, duly certified by the clerk of the county in which the same is docketed. Secondly, a true copy of all the assignments of such judgment which are necessary to establish

his claim, verified by his affidavit, or by the affidavit of some witness to such assignments. Third, an affidavit by such creditor, or by his attorney or agent, of the true sum due on such judgment at the time of claiming such right to purchase.

It is contended by the counsel for defendant, in the points which he has presented, that the papers first served, in reference to the Rowley judgment, were correct; but that if any doubt exists, there can be none in regard to the third set of papers served on the 18th May. And as he does not insist (and very properly it would seem) upon the sufficiency of the second set, my examination will be confined to the papers served on the morning of the 17th, and on the evening of the 18th of May.

No objection was interposed by the counsel for the relator to the copy of the docket presented by Chase, who clearly complied with the statute in respect to this paper, by which it appears that Norman C. Rowley, by Bowne & Crippen, his attorneys, recovered a judgment against William Aylesworth for $120,70 damages and costs, which was docketed 13th January, 1845, at one P. M. Neither was any objection taken to the affidavit of Chase, as to the amount due on the Rowley judgment; so the third requisite of the statute was complied with. The question then is reduced to this point: did Chase comply with that part of the statute, which requires that he should present a true copy of all the assignments of such judgment necessary to establish his claim, verified by his affidavit, or by the affidavit of some witness to such assignment?

There was an assignment of the judgment from Rowley to Grossfield, and one from Grossfield to Chase; but the sufficiency of the assignment from Rowley to Grossfield, was stiffly contested by the counsel for the relator, on the argument. The affidavit of Chase, in the first set of papers, states that " the foregoing assignments"—referring to the assignments before mentioned, which are both set forth at length—" are true and correct copies of the original assignments of Norman Rowley and Peter Grossfield." Rowley is called Norman C., both in the title to this affidavit and in the the title to the assignment from Grossfield to Chase. The affidavit of Chase, in the third set of

papers, that is, those presented on the evening of the 18th, states "that the following is a true and correct copy of the original assignment of Norman Rowley to Peter Grossfield ;" and then, after giving a literal copy, proceeds further to state, " that said Peter Grossfield sold and assigned said judgment to this deponent, and that the following is a true and correct copy of the said original assignment ;". also giving a literal copy as he had done of the assignment from Rowley to Grossfield.  I consider either of these affidavits as a verification of the copies of the assignments, and therefore in strict compliance with that clause in the 2d subdivision of the 60th section, which requires that a true copy of all the assignments, &c. be verified by the affidavit of the creditor seeking to redeem, or by the affidavit of some witness to the assignment.  It is much stronger than the case of *Ex parte Newell*, (4 *Hill*, 612.)

The question which remains to be considered is, whether the assignment from Rowley to Grossfield is sufficient within the first clause of the second subdivision of the 60th section, which requires the redeeming creditor to present a " true copy of all the assignments of such judgment" &c. which are necessary to establish his claim.   The assignment is as follows :

" *Otsego Com. Pleas.*  Norman Rowley *vs.* William Aylesworth.   For value received I hereby assign, transfer and set over to Peter Grossfield all my right, title and interest to judgment which I hold against William Aylesworth : the judgment was rendered in 1844, for $75 besides costs, and obtained by one Crippen my attorney, and I do hereby authorize the said Peter Grossfield to collect the said judgment, and in all respects to do and act with the same as I might were it not for this assignment.

April, 1848.                              NORMAN ROWLEY."

The particulars insisted on by the counsel for the relator as defective, are as follows : 1. The middle letter C., which appears in Rowley's name in the copy of the docket, is omitted in the assignment, both in the title of the suit and in the signature of the plaintiff's name.  2. " Bowne & Crippen" are named as attorneys for Rowley, in the docket, and only " Crippen" in the assignment.  3. The amount is stated at $75 besides costs—

Aylesworth *v.* Brown.

whereas in the docket it is $120,70 damages and costs. 4. The assignment says judgment was rendered in 1844, whereas it was docketed 13th January, 1845.

Grouping these circumstances together raises a cloud tending rather to darken the redeeming creditor's prospect of success, though the maxim, " *quæ singula non prosunt juncta juvant,*" does not exactly apply here, as it does in questions of fraud. (2 *Chit.* 301.) It is contended on the part of the relator, that the statute must be construed strictly, and that a literal compliance with its requirements is demanded. This to be sure was rather the impression that I had myself derived from a former examination of the earlier cases. But on the other side it is said that later decisions teach the doctrine of a liberal construction in respect to judgment creditors, and that a substantial and reasonable compliance with its requirements is a sufficient fulfillment of its provisions. Indeed law, as well as some other things, is progressive, and this is an age of progress. It is written, " the letter killeth, but the spirit maketh alive." But as this is a doctrine of the " higher law," which has been somewhat questioned of late, I will not take it upon myself to determine what weight it is entitled to, in this place, but will quote the maxim much akin in sentiment, " *Haeret in litera haeret in cortice,*" which is to be found in some law books. (6 *Bac. Abr.* 384.) Bacon, in this place, says, though doubtless not meaning it as a literal translation of the maxim just quoted, that such a construction ought to be put upon a statute as may best answer the intention which the makers had in view. (*See also* 6 *Hill,* 620 ; 7 *Barb.* 449.) And Bronson, Ch. J. in 4 *Denio,* 144, says, " I think the statute should receive such a reasonable construction as is best calculated to carry into effect the end which the legislature had in view. That end was, to make the land bring its utmost value, by means of an auction among the creditors, preserving to each one his right, according to the seniority of his lien. In *People, ex rel. Rice,* v. *Ransom,* (2 *Hill,* 54, 57, 58,) the affidavit was made on the 6th of April, one month and nineteen days before the 25th of May when it was presented for redemption. It was held sufficient, although the statute says

the affidavit must state the true sum due *at the time* of claiming the right to purchase. "I admit," says Cowen, justice, "it was not a literal compliance with the act, but it might be considered as substantially stating the true sum due. We must allow some latitude and take a statement which allows of ordinary certainty. The object is reasonable information." Justice Cowen made further remarks in favor of a liberal construction of the act. In 20 *Wend.* 560, where the court say this proceeding is a creature of the statute, and there should be a strict compliance with all its requirements, there was no copy of the docket of judgment at all. In *People, ex rel Post,* v. *Ransom,* (4 *Denio,* 145,) there was no proof of the assignment, nor any affidavit of the amount due, nor copy of the docket of judgment. The question was whether they had been waived. It was held that the immediate parties might make what arrangement they pleased; but whether they could omit any thing required by the statute, so as to affect other creditors, was a different question. In 2 *Comst.* 497, *S. C.* Strong, J. in giving the opinion of the court, which was that of affirmance, expressed doubts notwithstanding the decisions in 4 *Denio,* 258, and 7 *Hill,* 177, whether the affidavit could not be made by the attorney in the suit in which the judgment was obtained. In 19 *Wend.* 89, a copy of the docket was not produced. The court held that the officer could not waive it. In 18 *Wend.* 599, no affidavit of the sum due on the judgment was presented to the sheriff. In 6 *Wend.* 532, no copy of the docket was produced. In 4 *Denio,* 142, an affidavit made by an agent, swearing that he was such, and that he saw D. execute the assignment, was considered to be equivalent to a party's swearing, and therefore sufficient, although there were subscribing witnesses to the assignment. But Strong, justice, in 2 *Comst.* 488, thought this incorrect. In 4 *Hill,* 611, it was held that an affidavit stating the amount due might be made five days before papers were presented to the sheriff, and that an original assignment was sufficient, though the statute speaks of a copy; Bronson, J. saying, as to the affidavit, there is some difficulty in getting over the objection, within the principle of *Waller* v. *Harris,* (20 *Wend.*) but that that decision was somewhat shaken in *People* v. *Ran-*

*som,* (2 *Hill,* 51,) where it was held that the affidavit might be made before the creditor had a right to redeem.

In 5 *John.* 84, the plaintiff proved title in Wm. T. Robinson, but the name in the declaration was William Robinson, the T. omitted. Yates, justice, nonsuited the plaintiff, on the ground of variance; but the court held that the addition of the letter T. between the Christian and surname did not affect the grant, which was to be taken benignly for the grantee. It was no part of his name; for the law knows only of one Christian name, and it was not requisite in the first instance, nor unless made necessary by testimony on the part of the defendant, for the plaintiff to show that he was known as well with as without the letter T.

In *The People* v. *Fleming,* (4 *Denio,* 141,) Drinker assigned the judgment as administrator of Biddle, to the relator, but no letters of administration were produced; and the fact that he was administrator and that Biddle was dead, was proved by the affidavit presented to the sheriff; and Bronson, justice, thought it not necessary to show any proof of those facts. " Each of the assignments from the administrator to the relator commences with the title of the suit, one against four, and the other against three defendants, and then transfers the judgment to the relator, but without giving any particular description of the judgment as to amount, or the time when or the court in which it was recovered. And it is said that this does not sufficiently identify the assigned judgments as the ones under which the relator applied. But there is nothing in the objection. The suits mentioned in the assignment and those mentioned in the copy dockets left with the sheriff are between the same parties, and there is no proof nor pretense that Biddle ever had any other than these two judgments against the same defendants. In the absence of such proof, the presumption is that the judgments assigned are identical with those used before the sheriff." In 2 *Comst.* 489, Strong, justice, in giving the opinion of the court affirming the foregoing decision in 4 *Denio,* says, " The assignment of the judgment was brief and informal, but it was sufficient to pass the title to the relator, and that is all which the statute requires."

In the assignment from Rowley to Grossfield it was not neces-

sary to state when the judgment was rendered, or for what amount, or who appeared as attorney for the plaintiff.   Strike these out and all the objections are got rid of except the middle letter of the name, which I consider as disposed of by the case in 5 *John.* above cited.   *Utile per inutile non vitiatur.*   Is there any thing in these unessential facts necessarily conflicting with the copy of the docket ?   It is said judgment was rendered in 1844, and for aught I see it might well have been ; that is, a trial had and judgment obtained, although not docketed till the 13th of January, 1845.   The sum of $75 besides costs, does not contradict $120,70, damages and costs.   But it was obtained by "Crippen my attorney," when "Bowne & Crippen" are mentioned as the attorneys in the copy of docket.   Crippen might have been, and probably was, the one with whom the plaintiff communicated ; and indeed he might have done all the business. And this is the last of the objections.   They appear to me to be hardly sufficient to avoid this redemption.   There was no proof or pretense that there was more than one judgment between these parties.   It may therefore fairly be presumed to be the same with that mentioned in the copy of the docket of judgment, agreeably to the principle in 4 *Denio,* above referred to.   I think I must deny the motion.   But I am strongly inclined not to allow costs against the relator.   Less carelessness in allowing so many petty blunders would probably have saved this litigation.   There was some excuse for making the motion.

Motion for peremptory mandamus denied, without costs.