MRS. PHANELA S. WILLIAMS, Plaintiff in Error, vs. ISRAEL G. LASH, Defendant in Error.

ERROR TO THE DISTRICT COURT OF RAMSEY COUNTY.

The county of Ramsey obtained a judgment upon the official bond of the treasurer of the county, which was a lien upon a number of lots in the city of St. Paul. These lots were sold upon execution issued upon the judgment, and the county became the purchaser. There was no claim that the lands were purchased for the "public use" of the county, within the meaning of section 251, *Comp. Stat.. p.* 109. *Held,* That the county had no power to make the purchase or capacity to hold the lands, that the sale was invalid, and that the county acquired no interest in the premises by virtue of such sale and purchase.

An assignee of a mortgage tendered the amount necessary to redeem certain lots covered by her mortgage, which had been sold on execution, but omitted to present and file with the officer a copy of one of the assignments of the mortgage, verified as required by statute, establishing her chain of title. In lieu thereof an affidavit was presented to the officer, in which the deponent stated that he saw the previous owner of the mortgage assign the same to Plaintiff, and that she was then the owner and holder thereof. *Held,* That the object of the statute being to furnish the officer with reasonable evidence of the right of the party proposing to redeem, the Plaintiff had complied with the spirit and intent of the law, and the proceeding constituted a valid redemption.

And a party having no interest in the property (save such as was derived from the county upon its purchase under the judgment in its favor) is not in a position to object to the sufficiency of the redemption.

A tender to the deputy sheriff, who has charge of the sheriff's office, is a compliance with the statute which requires the tender to be made to the purchaser or officer who made the sale.

The following are the facts and conclusions of law found by the Referee in this cause, James Gilfillan, Esq., so far as they

are pertinent to the points passed upon and decided by this Court:

That at St. Paul, in the then territory of Minnesota, on the 1st day of October, 1856, William H. Randall being indebted to one Samuel Mayall, in the sum of seven thousand dollars, made, executed and delivered to the said Mayall a certain promissory note, in the words and figures following, to wit:

"$7.000. One year after date, for value received, I promise to pay to the order of Samuel Mayall, seven thousand dollars, with interest from date until maturity, at the rate of two and one-half per cent. per month, and interest after maturity till paid at the rate of five per cent. per month, interest payable semi-annually, and if not paid when due, then to bear interest at the same rate as the principal.

"WM. H. RANDALL.

"St. Paul, October 1st, 1856.

"D. A. J. BAKER, Surety."

And as security for the said indebtedness, the said Wm. H. Randall on the same day executed and duly acknowledged and delivered to the said Samuel Mayall a mortgage deed, whereby he granted, bargained, sold and conveyed to the said Samuel Mayall, and to his heirs and assigns, certain lots in Whitney & Smith's addition to St. Paul, conditioned for the payment of the principal and interest secured by said note, with power of sale, &c., which mortgage was duly recorded, on the 2d day of October, 1856.

And afterwards, on the 9th day of October, 1857, the said Samuel Mayall, for a valuable consideration to him paid, duly endorsed the said note and assigned and transferred the said mortgage to one John Mayall, and the assignment thereof was duly recorded in the office of said register of deeds, on the 12th day of October, 1857."

And afterwards, on the 20th day of April, 1858, the said John Mayall duly endorsed the said note and assigned and transferred the said mortgage to the Plaintiff, and the assignment thereof was, on the 18th day of September, 1861, duly recorded in the office of said register of deeds.

That no part of said sum of money, nor of the interest, has ever been paid except as hereinafter stated.

That said last mentioned assignment was made to Plaintiff to secure the payment of the sum of six thousand dollars by her loaned to the said John Mayall.

And no proceedings have been had at law for the recovery of the debts secured by said mortgage, or any part thereof.

That after the execution and delivery of said note and mortgage, to wit, in July, 1861, the said William H. Randall died, and since his decease the Defendant, Elizabeth C. Randall, has been duly appointed administratrix of the goods and estate which were of the property of said William H. Randall, and has entered upon the duties of that office, by virtue of said appointment, but no commissioners have been appointed for examining and allowing claims against the estate of said William H., as provided by law or otherwise.

And I do further find, that on the 17th day of September, 1850, in an action in the district court of the first judicial district of the then territory of Minnesota, in the county of Ramsey, wherein one Henry N. Hart was Plaintiff, and the said William H. Randall was Defendant, a judgment was duly rendered and entered by said Court in favor of said Henry N. Hart, Plaintiff, and against said William H. Randall, Defendant, for the sum of three thousand six hundred and thirty-five dollars and thirteen cents, which judgment was on the same day, duly docketed in the said county of Ramsey.

That on the 1st day of September, 1856, in the district court of the second judicial district of the then territory of Minnesota, in the county of Ramsey, in an action wherein the board of commissioners of the county of Ramsey, were Plaintiffs, and the said William H. Randall et als., were Defendants, which action was brought against one A. Pierce, the principal, and the other Defendants therein, the sureties upon the official bond of said A. Pierce, as treasurer of said county, a judgment was duly rendered and entered by said Court in favor of the said board of commissioners of the county of Ramsey, Plaintiff, and against said William H. Randall et als., Defendants, for the sum of nine thousand four hundred and forty-one dollars and eleven cents, which judgment was on the same day, duly docketed in the said county of Ramsey.

And afterwards, on the 18th day of December, 1857, for the purpose of obtaining satisfaction of said last described judgment, the Plaintiffs therein, the board of commissioners of the county of Ramsey aforesaid, duly caused to be issued out of and under the seal of said Court, a writ of execution directed to the sheriff of said county of Ramsey, whereby the said sheriff was commanded to satisfy the said execution out of the personal property of the said judgment debtors not exempt from execution in his said county, and if sufficient personal property of said judgment debtors could not be found in said county, then out of the real property not exempt from execution in said county, belonging to said judgment debtors on the day of said docketing of said judgment, or at any time thereafter, in whose hands soever the same might be, and to return the said execution within sixty days after its receipt by him to the clerk of the said Court; that said execution was duly endorsed with a direction to said sheriff to levy for and collect thereon the sum of six thousand seven hundred and thirty-five dollars and fifty-four cents, and interest on six thousand six hundred and fifty-seven dollars and fifty-seven cents from the 20th day of July, 1857, besides his fees, which execution was on the 18th day of December, 1857, duly delivered to the said sheriff, to be executed according to law. And afterwards, on the 30th day of December, 1857, there being no personal property not exempt from execution of said judgment debtors in said county wherewith to satisfy said judgment, the said sheriff, under and by virtue of said execution and in obedience thereto, did duly levy upon, among other real estate situate in said county, as the property of said William H. Randall, all and singular the land, premises and appurtenances thereto hereinbefore described, of which last named real estate and premises the said William H. Randall was, at the time of the docketing said judgment as aforesaid, the sole and absolute owner in fee and well seized and in due possession, and under and by virtue of said execution the said sheriff, after all due and legal proceedings taken by him in the premises, did afterwards, on the 19th day of February, 1858, duly offer for sale and duly sell separately the said lands and premises with their appurtenances, and on said

sale the said lands and premises were bid in by and struck off and sold to the said board of commissioners of the county of Ramsey, they being the highest, last and best bidders there-for, and thereupon on said day said sheriff duly filed certificates of said sale of said several parcels in the office of the register of deeds of said county of Ramsey, and afterwards on the 27th day of February, 1858, duly returned said execution with his certificate of his proceedings in the premises thereon endorsed ; that said sale was made subject to redemption according to law, and was so stated in said certificates.

And afterwards the said John Mayall, being the holder and owner of said note and mortgage, and no person having redeemed or offered to redeem said real estate from said sale, did, on the 25th day of March, 1858, for the purpose of redeeming said real estate from said sale under his said mortgage, proceed to the said officer making said sale, and file in the office of said sheriff,

1. A notice, &c. &c., (the Referee finds specifically all the facts relating to such redemption, and the sum paid for each lot redeemed.)

The amount so paid being the amount for which said several parcels were held as aforesaid, and the interest as fixed by law.

And afterwards, to wit, on the 21st day of March, 1859, no person having redeemed or attempted to redeem said real estate, or any part thereof from said John Mayall, Aaron W. Tullis, the sheriff who made said sale, but whose term of office had in the meantime expired, did, on the application of said John Mayall, for the purpose of completing said sale, and perfecting the title acquired thereunder and under said redemption, execute, acknowledge and deliver to said John Mayall, a deed, conveying as such sheriff, under said sale and redemption, to said John Mayall, his heirs and assigns forever, all the estate, right, title, interest and right in equity, which the said William H. Randall had in and to said real estate, on the 25th day of March, A. D. 1858, or at any time afterwards.

And on the 11th day of May, 1859, James Y. Caldwell, who was then, and since the time to redeem said real estate

expired, had been sheriff of said county of Ramsey, did upon application of said John Mayall, execute, acknowledge and deliver to said John Mayall, a deed reciting said judgment, and docketing said sale and redemption, and conveying or purporting to convey to said John Mayall, his heirs and as- signs forever, all the estate, right, title, and interest and right in equity which the said William H. Randall had in and to said real estate on the 25th day of March, 1858, or at any time afterwards.

The report then follows the title of the property to Defendant in Error. The facts relating to the redemption under the mortgage foreclosure, are stated in the opinion of the Court.

As conclusions of law from the foregoing facts, the Referee found—

1. That from the date of the mortgage first herein described until the time to redeem from the sale under the judgment secondly herein described expired, the said mortgage was a lien for the amount thereof upon the several parcels of land herein described.

2. That the sale under the judgment, secondly herein de- scribed, was a valid and legal sale, and that the board of com- missioners of the county of Ramsey had capacity to purchase at such sale.

3. That such sale, after the time to redeem thereof had ex- pired, extinguished the lien of the said first described mort- gage upon the several parcels of land so sold.

4. That the redemption by said John Mayall was valid and legal, and that thereby he acquired the right and interest of the purchaser at such sale.

5. That the assignment of said mortgage by said John May- all to Plaintiff, transferred to her all the right and interest which said John Mayall had under said mortgage and said redemption.

6. That the deeds executed by Caldwell & Tullis respec- tively were irregular and insufficient to complete said sale and pass the legal title to said John Mayall.

\*       \*       \*       \*       \*       \*       \*       \*

14. That the sale under the judgment first herein described was a valid and legal sale so as to entitle the purchaser or his

vol viii.—64

assigns to deed, by the sheriff, of the premises sold upon the expiration of the time to redeem.

15. That the attempt by Plaintiff to redeem from said sale was invalid.

Because at that time she had no interest in the premises sold, and because she did not produce to the officer and file in the sheriff's office with her notice, a copy of the assignment by said John Mayall to her verified by a subscribing witness thereto.

And that the Plaintiff is not entitled as against the Defendant Lash, to the relief demanded in her complaint.

And I therefore direct judgment to be entered in favor of said Defendant Israel G. Lash, and against the said Plaintiff.

Points and Authorities of Plaintiff in Error.

I.—The Commissioners of Ramsey county had not capacity to purchase the real estate involved in this action, or any real estate, at judicial sale, and the purchase by them, and certificate of sale, were void and of no effect.

II.—Said commissioners are only authorized to purchase real estate or hold title thereto for court house and jail sites, and other public uses, and had no power to purchase on the execution sale, and, consequently, the redemption of John Mayall is wholly unauthorized.    Comp. Stat., p. 153, sec. 13.

III.—If a purchase could be made by the Board of Commissioners, it must appear that it authorized such purchase by resolution, and no such action was had.    Angell & Ames on Corporations, sec. 229 et seq; Comp. Stat., p. 193, sec. 4.

IV.—The Sheriff's deeds to John Mayall did not follow the judgment or execution, and were therefore irregular and insufficient to pass the title.

V.—The facts found by the referee show that the Plaintiff legally redeemed the property sold under the Hart judgment, and therefore the Sheriff's deeds to Lash, after said redemption were nugatory, and passed no title.

Points and Authorities of Defendant in Error.

I.—The assignment of the mortgage by John Mayall to the

Plaintiff, carried no interest in the real estate described in the mortgage.

This mortgage was subsequent to the Ramsey county judgment. All Randall's interest in the property, at the time of the docketing of the Ramsey county judgment, when it is found that Randall was the owner in fee simple thereof, was sold by the sheriff under execution on this judgment, on the 19th day of February, A.D. 1858, and purchased by Ramsey county.

By this purchase Ramsey county obtained a perfect estate in fee simple, and older than that of the mortgage, subject, however, to the statutory rights of redemption by the judgment debtor, and other subsequent parties in interest.

On the 25th of March, 1858, less than a month after the sale, John Mayall, then the undisputed owner of this mortgage, and being, therefore, entitled to redeem, did redeem from the sale under the Ramsey county judgment. He thus became the owner of the same estate in the land held by Ramsey county after its purchase at the sale, that is, of all the right, title, interest and estate which Randall had at the docketing of the judgment, subject, however, to the remaining statutory rights of redemption. Now this estate John Mayall never assigned or transferred to the Plaintiff, but afterwards, on the 20th April, 1858, he assigned the mortgage to the Plaintiff as collateral security for a loan, which assignment, however, was never recorded, nor otherwise notified to Defendant in Error till 18th September, A.D., 1861, long after his title had been perfected.

Now the estate obtained by John Mayall by virtue of the redemption, was a very different estate from the one he held under the mortgage. His estate under the mortgage empowered him to obtain the other prior estate, that is all. *Comp. Stats., sec.* 115, *p.* 573.

II.—The constitution imposes no restrictions upon the powers of the county to hold property, and it is therefore conceived that there can be no particular limit in this regard ; certainly none excepting such as may be implied from the purposes for which it is created.

But this inquiry is not material in the case at bar, for the

suit in which the Ramsey county judgment was obtained was brought to enforce an official bond, executed to the county, and this purchase of real estate was made to collect the judgment recovered in such suit. *Comp. Stat., p.* 109. *secs.* 251-2.

III.—The title of the Defendant in Error to the property in question is perfect, and paramount to the Plaintiff's claim, under the sheriff's sale on the Hart judgment.

The attempt of the Plaintiff to redeem from that sale is invalid for the reasons assigned by the referee, and also for the further reason that the tender, if such it was, was made not to the officer who made the sale, but to a deputy of a successor in office. *Comp. Stat., p.* 573, *sec.* 116.

SMITH & GILMAN and HENRY HALE, Counsel for Plaintiffs in Error.

LORENZO ALLIS, Counsel for Defendant in Error.

*By the Court.*—ATWATER, J.—The title of the Defendant in Error to the premises in question depends upon the validity of the sale and purchase by the board of commissioners of Ramsey county, under the judgment obtained in favor of that county. It becomes therefore necessary to determine whether the county had the power and capacity to purchase under that sale, and whether it obtained any title to the premises by virtue thereof.

A county is a body politic, having a corporate capacity only for particular, specified ends and purposes, and is termed by legal writers a *quasi corporation*, that is, having corporate attributes *sub modo*. 2 *Kent's Com.*, 314. And the same author states, that the modern doctrine is to consider corporations as having such powers as are specifically granted by the act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any others. (2 *id.*, 350.) This principle has been established and affirmed by numerous and uniform decisions in the United States and state courts, so that at this day it stands unquestioned, and the only difficulty that can arise with re-

gard to it, is to determine its applicability to the particular case in hand.

And first, as to the powers of counties as expressly granted, defined and limited by statute at the time of the purchase of this real estate by the county of Ramsey, February 19th, 1858. *Sec.* 251, *Comp. Stat., p.* 109, provides that "each county shall continue to be a body politic and corporate for the following purposes, to wit: To sue and be sued; to purchase and hold for the public use of the county, lands lying within its own limits, and any personal estate; to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county." Some other provisions with regard to the power of county commissioners, having no bearing upon the question under discussion, need not here be cited.

It is to this enumeration of the powers of counties, that we must look for the authority claimed by the county, or on its behalf, to purchase the lands in question. The second paragraph is the only one conferring express power upon the county to purchase and hold real estate. That limits the power of the county to the purchase of such lands only, as are for the public use of the county, and lying within its own limits. It will be observed by reference to the act of February 28th, 1860, (*Sess. Laws,* 1860, *p.* 131) that an additional grant of power was made, authorizing the county to purchase lands sold for taxes.

The "public use" by the county, mentioned in the statute, must mean that actual use, occupation and possession of real estate, rendered necessary for the proper discharge of the administrative or other functions of the county, through its appropriate officers. Section 254 of the same act shows for what purposes the county may need the use of real estate, to wit, in the erection of court houses, jails, fire-proof offices, and all other necessary buildings for the use of the county. If the use be extended beyond these specified and obvious purposes, it is difficult to see what limitation can be placed upon the power of the county to purchase, so as to give the language any consistent signification.

That the real estate purchased by the county under this

judgment, was not purchased for the public use of the county within the meaning of the statute above cited, is clearly manifest from the papers before this court. It consisted of a large number of city lots, separate from each other, and was evidently bought in by the county, as any individual or natural person, Plaintiff, would purchase real estate upon a judgment creating a lien in his favor. Indeed, there is no pretence either in the pleadings, briefs, or any of the papers presented to this court, that this purchase was made by virtue of the second paragraph of the section above quoted. It is urged by the Defendant in Error that as the constitution imposes no restrictions upon the power of a county to hold property, it is conceived that there can be no particular limit in this regard, and certainly none excepting such as may be implied from the purposes for which it was created. But this doctrine would entirely reverse the principle laid down by the elementary writers and modern decisions, and instead of considering corporations as having such powers only as are specifically granted by the act of incorporation, or as are necessary for carrying into effect the powers expressly granted, we should hold that they had all such powers as are not withheld. This doctrne can neither be maintained on principle or authority.

There being then no express power granted by statute for the county to purchase and hold these lands, it becomes necessary to inquire whether such power is to be implied, as necessary for the purpose of carrying into effect the powers expressly granted. It is conceived that the only clause in the statute granting express power to which this claim of implied power could by any possibility be applicable, is that authorizing the county " to make all necessary contracts, and to do all other necessary acts in relation to the property and concerns of the county."

In the first place it is to be observed that taking the statute together in endeavoring to ascertain the extent of power conferred, the authority to make contracts and do all other necessary acts in relation to the property of the county, must refer to other contracts and acts than those relating to the purchase and holding of real estate. For since it is manifest that there must be many contracts and acts rendered necessary on the

part of the county, aside from that of the purchase of real estate, it is reasonable and natural to refer this language to these, rather than that one which is specially provided for in direct terms. Full effect and meaning can be given to the language used, without holding that it has any reference to the purchase of real estate by the county, and the power thereby granted is separate and distinct from that granted by the second paragraph, and equally necessary for the proper administration of county affairs.

But again, the express grant of power to purchase and hold real estate for the public use of the county, is equivalent to an absolute prohibition to purchase and hold for any other purpose. In the case *Tucker vs. St. Clement's Church*, 3 *Sand.*, 242, the Court remarks, that "when the powers of a corporation are not defined and restricted by its charter,. or by any general law, its capacity to take, hold, and dispose of real estate is precisely the same as that of a natural person, and that such a corporation may hold lands as a trustee, can no longer be considered a doubtful question. But when the purposes for which a corporation may take and hold real estate are expressed and enumerated in its charter, the maxim, "*expressio unius est exclusio alterius,*" is invariably applied, and the enumeration is construed *as a prohibition of all that it does not embrace.* Such a corporation can hold lands for the purposes specified, and none other, and hence, every question that can arise as to its legal capacity must be determined solely by a reference to the words of its charter. This principle of construction was adopted by our Supreme Court in the early case of *Jackson vs. Hartwell*, 18 *Johns.*, 422; has since been followed in cases too numerous to be quoted, and is now placed beyond the reach of judicial discretion by an express provision of the revised statutes. (1 *R. S.*, 602, *secs.* 1 *and* 2.) We may also remark that the same has been done in this state by the act of August 13, 1858. *Sec.* 2 *of art.* 14 of that act (*Comp. Stat., p.*193) provides that no county under this organization shall possess or exercise any corporate powers, except such as are enumerated under this act, or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given. This section was not repealed by the subsequent act of 1860, above referred to.

In the case of *Jackson vs. Hartwell*, it was held that the supervisors of a county are a corporation, with special powers and for special purposes only ; and that it was very questionable whether, prior to the act of April 8th, 1801, they were competent to take a grant of land. And that then they had no capacity to take and hold lands as supervisors for any other use or purpose than that of the county which they represented. In other words, that they had no authority in this behalf except such as was expresly granted by statute. In this case, as well as those of 1 *Cow.*, 260, 13 *Mass.*, 193, and others which might be cited, the limited powers of these quasi corporations are expressly noted as distinguished from those of ordinary corporations aggregate, and the idea is prominently and repeatedly presented, that their limited powers can only be co-extensive with the duties imposed upon them by statute ; and that they are restrained from a general use of the authority which belongs to these metaphysical persons by the common law:

But even granting that the same rules of construction are to apply to these political bodies in determining the extent of their powers, as to ordinary corporations aggregate, we fail to find any authority sanctioning the idea that the power here claimed may be legitimately inferred or deduced from the language of the statute which authorizes the county or commissioners " to do all other necessary acts in relation to the property and concerns of the county." Upon this point the case of *Beaty vs. The Lessee of Knowler*, 4 *Pet.*, 151, is closely analagous. A company was incorporated by the legislature of Ohio, by the name of " The proprietors of the half million of acres of land lying south of lake Erie, called the sufferers' land." The main question in the case was, whether the company under their charter had power to levy a tax upon the members, to pay the tax to the state assessed upon their lands. It was conceded that no express power was given by the charter for this purpose, but a clause in the charter authorized the directors to levy a tax " to defray all necessary expenses of the said company in purchasing and extinguishing the Indian claims of title, surveying, locating, making partition of the land ; and to defray all other necessary expenses of said company." And also a section providing that

the "directors shall have power to do whatever shall appear to them to be necessary and proper to be done for the well ordering of the interest of the proprietors, not contrary to the laws of the state." These clauses certainly grant as ample powers for the purpose of levying the tax as the language of our statute for the purpose of purchasing and holding real estate by the county.

With regard to the first clause, the Court say, that the words "all unnecessary expenses of the company," cannot be so construed as to enlarge the power to tax, *which is given for specific purposes*. And with regard to the other section it is said that "the provision in the tenth section, that the directors shall have power to do whatever shall appear to them to be necessary and proper to be done for the well ordering of the interest of the proprietors, not contrary to the laws of this State," was not intended to give unlimited power, but the exercise of a discretion *within the scope of the authority conferred*." If the words of this section are not to be restricted by the other provisions of the statute, but to be considered according to their literal import, they would vest in the directors a power over the land, only limited by their discretion. They could dispose of the land and vest the proceeds in any manner which they might suppose would advance the interest of the proprietors. It is only necessary to state this consequence to show the danger of such a construction.

This reasoning is entirely applicable to the case at bar. If the county may purchase and hold these lands it may lease them, improve them, use them, in short, in any manner that shall seem most conducive to the interests of the county. And the same reasoning would authorize the county to purchase real estate at other sales than those under judgment in its favor. But waiving this view, as a county may often have judgments in its favor which are a lien upon lands, if this power be conceded, it may become a large landholder and dealer in real estate. We cannot for a moment entertain the idea that any such power was intended to be vested in these corporations, and, as above remarked, the bare statement of the consequences which must result from a concession of the

vol viii.—65

power here claimed, is sufficient to show the danger of such a construction.

We think the views above expressed conclusive upon this question, and yet there are one or two other considerations not without weight in this connection. The land was purchased by the Commissioners of Ramsey county; and turning from the statute defining the powers of counties to that conferring authority upon the County Commissioners (*Rev. Stat.,* *p.* 59), we find not only an entire lack of authority in the statute prescribing their powers and duties, to make this purchase, but it is expressly provided that they shall have no other powers except such as are or may be given by law. *Sub.* 6, *Sec.* 13, *id. p.* 59.

This view of the lack of power in counties to purchase and hold lands as here contended for, we think is confirmed by reference to subsequent action of the Legislature upon the same subject. In 1860 (*Sess. Laws* 1860, *p.* 130,) the Legislature made an additional grant of power to counties, authorizing them to purchase and hold lands sold for taxes as provided by law. It is reasonable to infer from this, that the Legislature did not consider the counties had such power previous to the passage of this act. And yet it would seem that there could be much less doubt as to the power of the county to hold such lands without special and express provision therefor, than in such a case as the one at bar, since, by *sec.* 77, *Comp. Stat.,* *p.* 240, the Register of Deeds was authorized to bid off such lands for the county. And if the clause of the statute under which this power is claimed, authorized the purchase in this case, most certainly would it on a sale for taxes, a part of the proceeds of which at least, and in some cases the whole, would belong to the county.

The fact that this judgment was obtained upon the official bond of the treasurer of the county, does not place it in any more favorable position than would be any other judgment in favor of the county. The application of the principles above stated cannot be affected by the nature of the claim before the same has been put in judgment, nor by the fact that the purchase was made upon a judgment in favor of the county. The difficulty is in the absolute lack of power in the

county to purchase or hold real estate upon any judgment or otherwise, except as expressly authorized by law. If, as matter of fact, this real estate upon which this judgment was a lien, could not have been sold at all, or at least not without great sacrifice, unless the county became the purchaser, and there was no other means of collecting the judgment, it would be an argument proper to be addressed to the Legislature for power to make such purchase; though it is believed that a legislative grant of power of this kind, merely to meet the temporary exigencies of the times, unless carefully guarded and limited, would be of dangerous tendency. An argument of this kind, however, cannot properly be addressed to the Court, and even if it could in certain cases, in this, no foundation whatever has been laid for it in the pleadings, nor is there any pretence that the interests of the county would be sacrificed or prejudiced, unless the county had purchased the property.

The lots covered by the mortgage of the Plaintiff in Error, were sold under a judgment in favor of one Hart, which was a prior lien to the mortgage. The Plaintiff, through her agent, tendered the amount bid on the mortgaged property, with interest, within the prescribed time for redemption, to the Deputy Sheriff of Ramsey county, (who was then in charge of the sheriff's office,) for the purpose of redeeming the premises from said sale. The referee has found, as a conclusion of law, "that the attempt by Plaintiff to redeem from said sale was invalid, because at that time she had no interest in these premises sold, and because she did not produce to the officer, and file in the Sheriff's office, with her notice, a copy of the assignment of the said John Mayall to her, verified by a subscribing witness thereto." Whether the referee has erred in this conclusion, must depend upon the proper construction of the act applying to redemptions, under judicial sales, since the first ground upon which the referee held the Plaintiff not entitled to redeem, is disposed of by the views expressed upon the right of the county to purchase.

With regard to the point here raised, the statute provides, among other things, (*Comp. Stat,* sec. 118, *p.* 573,) that a redemptioner must produce to the officer, &c., " a copy of any

assignment necessary to establish his claim, verified by the affidavit of himself or of a subscribing witness thereto."

The referee has found that the agent for the Plaintiff at the time of such redemption produced to said deputy sheriff, and filed in said sheriff's office, (among other papers,) " a copy of the assignment of the said mortgage, by said Samuel to said John Mayall, and an affidavit of said Samuel Mayall, stating that he saw John Mayall execute an assignment of said mortgage to Plaintiff, and she was then the owner and holder thereof."

It is not pretended but that all the other steps required by statute (with one exception, noted hereafter,) were properly taken by Plaintiff to perfect her redemption. The deputy refused to receive the money, which was paid into court upon the commencement of this suit. Hart was the purchaser of these lots upon the sale under his judgment, and previous to the redemption, or attempted redemption by the Plaintiff, had sold his certificate of sale (so far as these lots were concerned,) to the Defendant in Error.

That the statute was not fully and literally complied with in this proceeding of the Plaintiff to redeem the premises is manifest; but was the defect assigned by the referee fatal to the right of the Plaintiff as a redemptioner under the statute? We think not, and that a consideration of the object of the statute, and the decisions upon those of similar nature, will make it apparent that so rigid a construction ought not to obtain as would oust the Plaintiff of her rights under her mortgage.

That the policy of the law at this day is to encourage and facilitate the redemption of property upon judgment and mortgage sales, will scarcely be questioned, both from motives of humanity to the debtor, as well as to promote the interests of creditors. Property will ordinarily bring more for the benefit of both parties, with this right attached than without. And the uniform tendency of late legislation is to extend rather than restrict this right.

With reference to the proceedings required by statute on the part of the redemptioner, the Legislature seems to have had a twofold object in view. First, to furnish evidence to

the officer or purchaser that the party proposing to redeem has such right under the statute ; and, second, to provide the evidence whereby a second or other redemptioner may know the amount to be paid to a previous one.    It is only with regard to the first of these objects that the present case need be considered.    And it is evident, from the nature of the case, that the evidence required by statute is not and could not be conclusive of the fact to be shown, or such as to amount to absolute certainty ; but such ordinary and reasonable degree of certainty as men act upon in the usual affairs of life.

The Plaintiff in offering to redeem, omitted (for what reason does not appear,) one step required by statute, to show the officer her chain of title, in the form required, but, we think, supplied it in substance.    The affidavit of Samuel Mayall stated that he saw John Mayall execute an assignment of this mortgage to Plaintiff, and that she was then the owner and holder thereof.    If either of these facts were untrue, the deponent would have rendered himself liable to the penalties of perjury.    The fact of the assignment thus appeared by reasonable evidence, and the further fact intimately connected therewith, and equally important, (though not required by statute) that the Plaintiff was then the owner and holder of the mortgage.

It is doubtless true that the statute allowing a creditor to redeem lands sold under execution, was, by some of the earlier decisions, strictly construed as to the evidence to be produced by the creditor showing his right to redeem. But this doctrine has been repudiated by all the later decisions to which we have had access, and the more reasonable one now obtains, that, the statute being remedial in its nature, should be construed liberally, as in favor of the debtor and his redeeming creditors.    In *The People vs. Ransom*, 2 *Hill*, 51, which was a case of redemption under a statute, similar if not identical with ours, the Court say, speaking of this evidence, " the documents are mere instruments of business—preliminary proofs—the whole of which are intended and can operate as nothing more than a check to the imposition of fictitious claims, and as furnishing the means to detect fraud."    The statute there required the redeeming creditor to show by affi-

davit the amount due him *at the time* of claiming his right of redemption. In that case the affidavit was dated some six weeks previous, and was held good, the Court strongly intimating that even had it been made immediately after the sale it would have been a sufficient compliance with the statute, and remarking, that " to execute the statute, we must allow some latitude, and take a statement which amounts to ordinary certainty;—that the object is reasonable information." And, further, that " in any view which can be taken of the affidavit, it must be admitted that the relator has not literally complied with the statute. And its effect (the affidavit) must in a great measure depend on the inclination of the judicial mind to construe the act liberally in favor of the debtor and his redeeming creditors, or so strictly as to demand an exact compliance rather with its words than its substance and spirit."

So in *Exparte Newell*, 4 *Hill*, 608, the redeeming creditor presented what purported to be copies of two assignments of a judgment under which he claimed the right to redeem, but the affidavit annexed did not show that they were copies as required by statute. And yet the affidavit was held sufficient, the Court remarking, that " the party swears positively that he is the assignee and owner of the judgment, and if it had not been duly assigned, he may be convicted of perjury." And it was also held in the same case, that where the statute required a copy of the assignment to be produced, the production of the original would be a sufficient compliance with the statute.

The statute requires the copy of the assignment to be verified by the redeeming creditor, or of a subscribing witness thereto. In this case the fact of the assignment is not proved by a subscribing witness, or, rather, it does not appear that Samuel Mayall was a *subscribing* witness of the assignment. But the facts which he states make him a subscribing witness within the meaning of the statute. In *The People vs. Fleming*, 4 *Denio*, 137, it was held that where there is a subscribing witness the affidavit of one acting in the matter as agent of the creditor, swearing directly to such agency, and that he saw the instrument executed and delivered, is

sufficient, being equivalent to the affidavit of the creditor himself.

A further instance of the liberal construction given to this statute is found in *Aylesworth vs. Brown*, 10 *Barb.*, 167, in which it was held that an assignment of a judgment is not rendered invalid by the omission of the middle letter of the assignor's name in the title of the suit and in the signature ; nor by the omission of the name of one of the attorneys for the Plaintiff in the judgment ; nor by the stating the amount of the judgment to be " $75 besides costs," while the amount mentioned in the docket is $120 damages and costs ; nor because the assignment states that the judgment was rendered in 1844, whereas it was docketed on the 13th of January, 1845. And the remark of Bronson, J., in 4 *Denio*, is approved, stating that " the statute should receive such a reasonable construction as is best calculated to carry into effect the end which the Legislature had in view. That end was to make the land bring its utmost value, by means of an auction among the creditors, preserving to each one his right, according to the seniority of his lien."

Although none of these cases show the same omission or variance from the statute that appears in the case under consideration, yet it is believed they fully justify the construction of the statute as above stated ; and that though the letter of the statute was not complied with by the Plaintiff in proceeding to redeem, its spirit and intent was. And we are satisfied that both as a general principle, and as applied to this particular case, far less injustice would result to allow a redemption upon the facts here disclosed than to hold the creditor precluded from it.

But there is another view of this matter, which we think must also dispose of this objection to the redemption upon a different ground. The Defendant in Error is the only party claiming or pretending to have any interest in the property who objects to the foreclosure which this action was brought to effect. He was purchaser of this property upon the foreclosure of his mortgage against John H. Randall, and as such purchaser, here claims as redemptioner upon this prior judgment in favor of Hart. That is, he stands practically and

substantially in that position, although instead of acquiring or seeking to acquire his interest through the forms of redemption, he became the purchaser of the sheriff's certificate to Hart, so far as this property is concerned. But he alleges in his answer that he " made the purchase and procured the assignment and conveyance of the aforesaid sheriff's certificate of sale, so far as it affected the said last named real estate, from the said Hart, and of all the right, title, interest and estate of said Hart, in and to the said real estate as aforesaid, and procured and received the aforesaid (certificate) for the purpose of securing, assuring, and confirming his aforesaid right, title, interest and estate which this defendant previously thereto had in the said real estate as aforesaid."

The only interest which John H. Randall had in this property, so far as the case shows, was the interest or right of John Mayall, acquired by him through a redemption of this property from the sale upon the judgment in favor of Ramsey county. As that sale was invalid, and the purchaser took nothing thereby, Mayall, of course, could take nothing by his redemption, and, consequently, had no interest or estate in the property to convey to Randall, nor had Randall any to grant by his mortgage to Lash. Nor could Lash acquire any rights under his judgment of foreclosure not conveyed by his mortgage, at least so far as the Plaintiff is concerned, since her mortgage is a prior lien on the property, nor does it appear that she was made a party to the suit in the foreclosure by Lash. It is not perceived, therefore, that the Defendant in Error is in a position to object to this redemption by the Plaintiff, and aside from his objections, none others are raised.

This view also disposes of the objection that the money was not tendered to the proper person. Aside from this, however, I think the objection not well taken. The statute requires the money to be paid to the purchaser or officer who made the sale.

The sheriff, of course, made the sale on the Hart judgment, though whether he did so in person or by deputy does not appear, though it seems that the deputy sheriff executed the certificate to the Defendant in Error. The referee finds that

the tender was made to Ross Wilkinson, the deputy sheriff of Ramsey county, who was at that time in charge of the sheriff's office. The deputy sheriff, by statute, is " empowered to do and perform all the duties devolving on the sheriff of the county." The officer who makes the sale is the sheriff, whether he acts in person or by deputy, and in requiring the payment to be made to the officer, rather than the *person* who made the sale, the intention, doubtless, was to give both the purchaser and redemptioner the security of the office (the sheriff's sureties,) for the safe keeping and payment over of the money to the party entitled to it. To hold that the statute intended that the tender could only be made to the pur. chaser or *person* who made the sale, would be practically to greatly limit the right of redemption, and in many cases entirely destroy it, as the purchaser is not unfrequently a nonresident, and the person who makes the sale may be dead, absent, or incapable of receiving the money.

We think, therefore, upon the facts found, that the Plaintiff is entitled to the relief demanded in her complaint, and that the judgment below should be reversed. The cause is remanded to the Court below, with direction to enter judgment accordingly.