The opinion of the court was delivered by
White, J.
Michael Romero was appointed the tutor of the minor Sylvanie Romero, who was born on the twenty-second of July, 1852, who married Arthur Sandoz on the fourth of May, 1868, and became of *722 age on. the twenty-second July, 1873. Romero, tutor, died in 1871. The administrator of his estate filed on the seventh of November, 1877, an account of his gestión, and in it included, what it seems was called, the account of tutorship of Romero with his former wards, Sylvanie and Odile her sister. This account charged the estate with various sums received by Romero, as tutor, at different dates, commencing on March 2,1868, and ending in 1869, amounting in whole to $3163 75. No interest was allowed on the various items. Of this sum one half was stated as coming to Sylvanie Sandoz, and she was debited with various items from June 15,1866, to July 2, 1870, amounting to $823 70. Thus the account as to the state of things between Sylvanie Romero and the estate of Romero was as follows:
One half of $3,163 75.....................•.........$1,581 87'-
Less sums due by her, or rather paid for her account 823 70
Balance in her favor........................... $758 17¿
This account was opposed by Sylvanie Romero, wife of Sandoz, on the ground that interest on the items credited had not been allowed, whilst it should have been at the rate of five per cent on each and every item from the date of receipt, and on the further ground that each of the items charged as paid had not been so disbursed. She prayed amendment of the account in accordance with her opposition.
D. Romero, as an heir, and others, opposed the account on the ground that nothing was due Sylvanie, her claim being prescribed by four years, which prescription was pleaded. The same persons further opposed on the ground that a sum disbursed by the tutor for the board of the former minors had not been charged against them. The court below ordered that Sylvanie be placed on the account for $1275 50, with five per cent interest from seventh November, 1877, subject to a credit for board of $180. The administrator and the other heirs, who had opposed the allowance of the claim of Sylvanie, appealed. The points for decision, as presented by the records and argument of counsel, are embraced within the following inquiries:
1st. The action of the minor against his tutor, respecting the acts of the tutorship, being prescribed by four years, to begin from the day of majority (C. C. 362), can an administrator after the acquisition of prescription waive it ?
2d. If not, did the pleaded prescription cover all the items; and if not, are such items, not covered by the prescription, secured by the minors’ mortgage ?
3rd. What interest, if any, is due upon the sum exigible ?
4th. What is the amount due?
First and second. That an administrator has no power to waive or *723 renounce an acquired prescription is elementary. This being the case, it is obvious that despite the acknowledgment in the account those items, either of debit or credit, which were for sums collected by the tutor during the existence of the tutorship, or disbursements made during the same period, were prescribed when the account was filed. The opponent, Sylvanie, became of age on the twenty-second of July, 1873, the account having been filed on the seventh November, 1877, more than four years after majority. O. C. 362; Gilbert vs. Meriam, 2 A. 162; Bonnefoi vs. Wells, 10 A. 658; Gourdain vs. Davenport, 10 B. 174; Viola vs. Burguires, 19 A. 149.
The serious point of difficulty, however, is, did the prescription of four years apply to those items of the account representing sums collected by the tutor after the termination of the tutorship, by the emancipation of the ward consequent on her marriage in May, 1868 ? We think not, the prescription of four years, provided by O. 0. 362, is one respecting the acts of the tutorship,” and acts done upon the termination of the legal relation of tutor and ward are in no proper sense of the words tutorship acts. The will of the law-maker and not that of the individual creates a tutorship; and, although the mind may conceive that a tutor who continued to act as such after the cessation of the tutorship by emancipation might be held to the responsibility of a tutor, as is provided by our law where one without authority acts as a tutor for a minor, this conception would not necessarily import that all the advantages of the short prescription would attach to such a gestión. Paul Pont, vol. 1, p. 497.
Says the same author in speaking of a state of facts for the purposes of inquiry, like the one before us: “ Oar l’ómaneipation légale acquise de plein droit et par le seul fait du mariage au mineur qui se marie, est irrevocable; elle subsiste méme aprés la dissolution du mariage, bien que. l’époux soit encore a ce moment en état de minorité, puisque la loi qui prononce l’émancipation par le mariage ne fait aucune distinction. Si done 1’émancipation subsiste, il n’y a pas de tutelle; et ■s’il n’y a pas de tutelle, il ne saurait y avoir d’hypothéque légale: c’est ce que la Oour supréme a reconnu, dans l’espéce en cassant l’arrét qui ■en avait autrement décidé.” P. 497.
Further, in speaking of a gestión by the tutor for account of the ward after emancipation or majority, he adds: “ Le pupille ou ses ayants droit, s’ils ont laissó aux soins de l’ex-tuteur, l’administration de leurs ■affaires, ont constituó par la une gestión nouvelle, qui n’est pas comme la tutelle, établie par la loi ni dans'des conditions de temps et de durée auxquelles des conventionsparticulióresnepeuvent rienajouter.” P.501.
In fact to apply the four years prescription which begins from date of majority to sums collected after the termination of the tutorship, *724 would in many cases compel the application of a term of prescription, beginning its career before the obligation had come into existence.
This court, upon principles analogous to the foregoing, said in Leverich vs. Adams, 15 A. 310, in speaking of sums claimed to have been collected by one who had been tutor, but who asserted for given reasons-that the tutorship had ceased during the minority of the ward, when the collections were likewise made: “ If his office terminated he became-a negotiorum gestor, and the minor had his tacit mortgage as such under O. 0. 3283.” We do not think however that under the facts of this case the sums collected, and which we hold not barred by the prescription of four years, are secured by either the mortgage created by C. 0. 3315 or the tutorship mortgage proper — not by that created by C. C. 3315, for one could not assume a tutorship of a person not subject to tutorship; not by the tutorship mortgage proper, for although, as taught by the greater number of civilians, it may be that the minors’’ mortgage secures sums collected after the termination of the tutorship up to the period when the action for account is barred, or the tutor discharged, yet even this rule, so applied, becomes inapplicable: First.. Where there is no necessary connection between the after gestión and the administration as tutor. Second. Where the duration of the gestión, the sums paid the ward, and all the facts point to a knowledge- and consent on the part of the ward, thus creating an implied or tacit, mandate. Paul Pont, v. 1, p. 501; Marcadé, v. 5, p. 521. Both of which exceptions we find in the record before us. Nor do we think that the-opposing of the account as a tutorship account should conclude the claim as a negotiorum gestor. The account was filed as a tutorship account, and was so in part. Even were the opposition of Mrs. Sandoz. entirely disregarded, her claims would yet be on the account — the other opponents being actors seeking to have them stricken off on the ground of prescription — when the evidence is in the record, without objection,, showing the plea to be untenable as to the items not collected during the tutorship.
We have not noticed many points urged by counsel, because we consider them practically passed on by the views we have expressed. Thus we cannot impute sums collected after emancipation to the amount claimed as due before, because the existence of such a previous debt cannot be ascertained in consequence of the pleaded prescription — prius oportet esse quam operari. So,’ also, we cannot consider the claimed sums due for board before the emancipation, or the complaint that they exceeded the power to spend, vested in the tutor. The sums charged as paid since the emancipation are admitted to have been disbursed. There is no proof as to their incorrectness. We think they should be allowed.
*725 "We think, in the absence of proof of demand, the sums being due ■either as negotiorum gestor or under a tacit mandate, interest is only due from date of death. O. P. 988; 6 L. 362. Stating, then, the account ■in accordance with the foregoing, we have—
Received for account of Sylvanie Sandoz, from June 9,1868, to March 13th, 1869 .................................. $1,498 75
■Charges against her from May 26, 1868, to July 2,1870, and the sum of $50 in addition, as admitted in brief of counsel, gives.................................................. 748 07
Balance due............................................. $750 68
Of this sum $168 50, it is agreed, is to bear no interest.
It is therefore ordered that the judgment below be reversed; and .proceeding to render such judgment as should have been rendered ■below, it is ordered that there be judgment recognizing Mrs. Sylvanie Romero, wife of Arthur Sandoz, as an ordinary creditor of the suc■cession of M. Romero, in the sum of $750 68, with ñve per cent interest on $582 18 from first December, 1871, the latest date fixed as the period of the death of M. Romero. The costs of appeal to-be borne by ■Sylvanie Romero, those below to be borne by the other opponents.